Case 5:24-cv-00077   Document 20   Filed on 02/04/25 in TXSD   Page 1 of 16

United States District Court
Southern District of Texas
**ENTERED**
February 04, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| **AMERIS BANK,** § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. 5:24-CV-00077 |
| § | |
| **DUBAI TRUCK LINES, INC.,** *et al.*, § | |
| § | |
| Defendants. § | |

## ORDER

Plaintiff Ameris Bank doing business as U.S. Premium Finance ("Plaintiff") brought this action against Defendants Dubai Truck Lines, Inc. ("Dubai"), MCSS Transportation, Inc. ("MCSS"), Agave Truck Lines, Inc. ("Agave"), and Jorge Arce, Jr. ("Arce") for multiple tort and contract claims. (Dkt. 1.) Despite receiving notice of this suit, no Defendant has made an appearance. (Dkts. 7–10.) Now pending before the Court is Plaintiff's Amended Motion for Default Judgment. (Dkt. 17.) For the reasons discussed below, Plaintiff's Motion (Dkt. 17) is GRANTED in part and DENIED in part.

## Background

Plaintiff is a bank incorporated in the state of Georgia. (Dkt. 1 at 1, 3.) On June 20, 2023, Dubai "entered into a Premium Finance Agreement and Disclosure Statement" ("Agreement")[1] with Plaintiff. (*Id.* at 3; Dkt. 11 at 9–11.) Under the Agreement, Plaintiff offered to loan Dubai $1,393,533.87 to pay its insurance premiums, and Dubai agreed to pay the amount owed according to the schedule outlined in the Agreement. (Dkt. 11 at 9–11.) The Agreement obligated Dubai to

---

[1] In the Agreement, "Lender" refers to Plaintiff and "Borrower" refers to Dubai. (Dkt. 11 at 11.)

pay Plaintiff a down payment of $131,883.33 and make ten monthly payments of $131,883.33 to Plaintiff beginning on July 21, 2023. (Dkt. 11 at 9, 11.) The Agreement permitted Dubai to use the funds only to pay the premiums on insurance policies "determined at the time" Plaintiff accepted the Agreement—it would not apply to premiums of policies entered into thereafter. (*Id.* at 11.) In the event that Dubai did not make a payment, Plaintiff retained the right to issue a "notice of cancellation to the insurer which issued each of the policies listed in the Agreement." (*Id.*) If Dubai defaulted, the Agreement also gave Plaintiff "full power and authority to cancel the policies listed in th[e] [A]greement." (*Id.*)

On July 6, 2023, Plaintiff delivered $1,251,650.54 to Dubai for it to pay its insurance premiums. (Dkt. 1 at 3.) By July 21, 2023, Dubai had not made its first payment, and Plaintiff subsequently issued a notice of its intent to cancel the insurance policies. (*Id.* at 3–4.)[2] On August 4, 2023, Plaintiff notified Dubai of the policy cancellation. (*Id.*) Afterwards, Dubai made one payment of $69,238.75 on August 28, 2023, and another payment of $69,238.75 on September 1, 2023. (*Id.* at 4.) Dubai made a third payment of $60,000 on September 7, 2023. (*Id.*) Plaintiff did not reinstate the policies but instead refunded Dubai's payments. (*Id.*)

After cancelling the insurance policies, the insurer informed Plaintiff that Dubai had not paid an endorsement for 99 trucks owned by MCSS or Agave. (Dkt. 1 at 4.) The insurer refused to cancel coverage for these vehicles and did not return the premium because it claimed it "was entitled to offset amounts owed for the endorsement by the amount of the returned premium." (Dkt. 1 at 4.)

---

[2] The complaint states "Dubai timely delivered notice of cancelation [*sic*] of the insurance policies to Dubai." (Dkt. 1 at 4.) However, the Court will proceed with the understanding that this is a typographical error and that Plaintiff meant to indicate that *Plaintiff* delivered notice of cancellation.

Plaintiff filed a complaint on May 7, 2024, against Dubai, MCSS, Agave, and Arce claiming: (1) Dubai breached the Agreement; (2) Dubai fraudulently added an endorsement to its insurance policy without notice; (3) Arce, MCSS, and Agave aided and abetted Dubai in committing a tort against Plaintiff; (4) Arce, MCSS, and Agave acted in concert to procure an endorsement; and (5) Arce, MCSS, Agave, and Dubai conspired to seek the endorsement. (Dkt. 1.)

After Defendants failed to respond, Plaintiff originally moved for default judgment on September 25, 2024. (Dkt. 11.) This Court denied the Motion because Plaintiff had not initially requested entry of default. (Dkt. 14.) On December 3, 2024, Plaintiff requested an Entry of Default. (Dkt. 15.) The Clerk of Court ("Clerk") entered default against Arce, Agave, MCSS, and Dubai on December 4, 2024. (Dkt. 16.) That same day, Plaintiff filed an Amended Motion for Default Judgment against all Defendants. (Dkt. 17.) Plaintiff thereafter sent notice to all Defendants of its Amended Motion for Default Judgment. (Dkt. 18.)

## Legal Standard

"A default occurs when a defendant has failed to plead or otherwise respond to a complaint." *N. Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). If a defendant fails to plead or defend a lawsuit against him, the Clerk must enter the defendant's default. Fed. R. Civ. P. 55(a). A plaintiff may "apply to the court for default judgment" only after the Clerk enters the defendant's default. Fed. R. Civ. P. 55(b)(2); *N.Y. Life Ins. Co.*, 84 F.3d at 141.

However, "a defendant's default does not in itself warrant the court in entering a default judgment." *Nishimatsu Const. Co., Ltd. v. Hous. Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). A court may enter default judgment depending on: "(1) whether the entry of default is procedurally warranted; (2) the substantive merits of the plaintiff's claims and whether there is a sufficient basis

in the pleadings for the judgment; and (3) what form of relief, if any a plaintiff should receive." *Griffin v. O'Brien, Wexler, & Assocs.*, 680 F.Supp.3d 772, 780 (E.D. Tex. June 30, 2023) (internal citations omitted). A defendant in default "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Nishimatsu*, 515 F.2d at 1206 (internal citations omitted).

## Discussion

### A.     Jurisdiction

Before evaluating the appropriateness of entering default judgment, the Court must assure itself that it has subject matter jurisdiction. *Escalante v. Lidge,* 34 F.4th 486, 490 (5th Cir. 2022). A court has subject matter jurisdiction through diversity jurisdiction when (1) the litigants are citizens of different states, and (2) the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Plaintiff is a corporation "organized under the laws of the state of Georgia." (Dkt. 1 at 1.) Dubai, MCSS, and Agave are "corporation[s] organized under the laws of the State of Texas with [their] principal place[s] of business located" in Texas, and Arce is a citizen of Texas. (*Id.* at 1–2.) Additionally, Plaintiff seeks $248,662.51 in damages, as well as attorney's fees, pre-judgment interest, and post-judgment interest. (*Id.* at 5.) Therefore, this Court has subject matter jurisdiction to proceed in this case because the parties are completely diverse, and the amount in controversy pleaded exceeds the required jurisdictional amount. Furthermore, the Court has personal jurisdiction over Defendants in this case because they are domiciled in the state of Texas. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358–59 (2021).

### B.     Appropriateness of Default

#### 1.     Procedural Appropriateness of Default Judgment

The court evaluates whether default judgment is procedurally warranted according to the *Lindsey* factors: "(1) whether material issues of fact are at issue; (2) whether there has been

substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

First, no material facts are in dispute because Plaintiff's complaint contains well-pleaded allegations, and no Defendant has responded to the allegations. (Dkt. 1; Dkt. 17 at 2.) Second, Defendants have substantially prejudiced Plaintiff by failing to respond to the suit. *Griffin*, 680 F.Supp.3d at 781. Third, the lack of appearance by any Defendant establishes grounds for the default. Fourth, the record does not support the proposition that Defendants have not appeared due to a good faith mistake or excusable neglect. Notably, Defendants received notice twice—when Plaintiff originally moved for default judgment (Dkt. 11) and when it renewed its motion (Dkt. 17)—and have not responded to the suit. (Dkts. 12–13, 18.) Fifth, the Court does not believe that entering default judgment would be unduly harsh under these circumstances. However, the Court will scrupulously evaluate the claims for relief to curtail any harshness. Sixth, the Court does not foresee a reason why any Defendant may be able to establish "good cause" for its failure to respond. *Lindsey*, 161 F.3d at 893. Consequently, the *Lindsey* factors support finding the matter procedurally appropriate for default judgment.

### 2. Sufficiency of the Complaint

The court cannot sustain a motion for default judgment when the allegations are "contrary to facts of which the court will take judicial notice," "not susceptible of proof by legitimate evidence," or "contrary to uncontroverted material in the file of the case." *Escalante*, 34 F.4th at 493 (internal citations omitted). Even if a plaintiff complies with the relevant procedures, a court may still deny default judgment "if the plaintiff has failed to state a claim on which relief can be

granted." *Escalante*, 34 F.4th at 492 (internal citations omitted). A plaintiff must make specific allegations regarding the elements of each claim in order to set forth a well-pleaded factual allegation. *Id.* (internal citations omitted). Conforming to the federal pleading standards, the complaint's factual allegations must "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Griffin*, 608 F.Supp. 3d at 782 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); Fed. R. Civ. P. 8.

As a preliminary matter, the Agreement contains a choice of law provision the Court must address. In diversity actions, the substantive law of the forum state determines the enforceability of a choice of law provision. *Western-Southern Life Assurance Co. v. Kaleh*, 879 F.3d 653, 658 (5th Cir. 2018) (internal citations omitted). A choice of law clause is enforceable under Texas law, unless the provision violates a fundamental policy of the state, or the state choice "has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice." *Id.* (internal citations omitted).

The Agreement includes a choice of law clause stating that the "contract will be construed by the laws of the state of issuance." (Dkt. 11 at 11.) While a specific state is not specified, Texas appears to be the proper state of issuance. Plaintiff is "duly authorized to finance insurance premiums in the State of Texas." (Dkt. 1 at 3.) Moreover, Dubai, a Texas entity, conducts business in Texas and entered into the Agreement with Plaintiff in order for Plaintiff to pay Dubai's insurance premiums. (*Id.* at 2–3.) Considering Plaintiff claimed this Court is the proper venue because "a substantial part of the events or omissions giving arise [*sic*] to this claim occurred in this district," it follows that Texas can be appropriately considered the state of issuance. (Dkt. 1 at 2.) Therefore, the Court will apply Texas law to Plaintiff's claims.

### i.  Breach of Contract

To succeed on a breach of contract claim under Texas law, a plaintiff must show: (1) "the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Compass Bank v. Kelley*, 2018 WL 8807406, at *2 (S.D. Tex. Sept. 14, 2018) (internal citations omitted).

First, the Agreement is a valid contract. The written Agreement constitutes an offer by Plaintiff to loan Dubai funds to pay insurance premiums. (Dkt. 11 at 9–11); *Compass Bank*, 2018 WL 8807406, at *3. Dubai accepted the agreement, as evidenced by the signature of its registered agent, Arce. (Dkt. 1 at 2; Dkt. 11 at 9.) There was valid consideration in the form of Plaintiff's loan to Dubai and Dubai's promise to repay the loan according to the Agreement—as stated in the Agreement. (Dkt. 1 at 3; Dkt. 11 at 9, 11.)

Second, Plaintiff performed its obligation to Dubai under the Agreement. The Agreement obligated Plaintiff to pay the insurance companies "the balance of the premiums upon the policies" covered by the Agreement. (Dkt. 11 at 11.) Plaintiff asserts it "funded the premium[s] for Dubai's insurance policies in the amount of $1,261,650.54" on July 6, 2023. (Dkt. 1 at 3.) Accordingly, Plaintiff performed its contractual obligations set forth in the Agreement.

Third, Dubai failed to make payments according to the payment schedule. Under the Agreement, Dubai "promise[d] to pay [Plaintiff] the amount shown in the completed schedule in th[e] Agreement." (Dkt. 11 at 10–11.) In the event Dubai did not pay Plaintiff within five days of the due date, Dubai "agree[d] to pay a delinquency and collections charge of five percent of the delinquent installment." (Dkt. 11 at 11.) Plaintiff contends that Dubai failed to render the first payment by July 21, 2023. (Dkt. 1 at 3.) After Plaintiff issued notice of the policy cancellations,

Dubai made three payments—each of which fell below the monthly payment amount stated in the Agreement. (Dkt. 1 at 4.) Taking Plaintiff's factual allegations as true, Plaintiff has demonstrated that Dubai breached the Agreement by failing to meet its payment obligations pursuant to the Agreement. *Twombly*, 550 U.S. at 555.

Finally, Plaintiff claims damages in the amount of $248,662.51 due to Defendant's breach. (*Id.* at 5.) Therefore, Plaintiff's well-pleaded factual allegations have met each element of a breach of contract claim.

### ii.     Fraud

To establish a claim of fraud, a plaintiff must show: (1) "the defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result. *CBE Grp., Inc. v. Lexington Law Firm*, 993 F.3d 346, 350 (5th Cir. 2021) (citing *JP Morgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018)). A claim of fraud must meet the particularity requirements set forth in Rule 9 of the Federal Rules of Civil Procedure. *Crosswell v. Martinez*, 120 F.4th 177, 184 (5th Cir. 2024) (citing Fed. R. Civ. P. 9(b)). Rule 9 requires "allegations of the particulars of 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Id.* (internal citations omitted).

Plaintiff alleges Dubai fraudulently added an endorsement to its insurance policy. (Dkt. 1 at 6.) The only factual allegations Plaintiff provides concerning the endorsement are that the endorsement covered 99 trucks, the trucks were owned by either MCSS or Agave, the endorsement

added $1 million in insurance coverage, and Plaintiff did not know of the endorsement. (Dkt. 1 at 4.) The rest of Plaintiff's pleadings are mere conclusory allegations that do not sufficiently meet the elements of a fraudulent cause of action. (*See id.*) The pleadings do not state whether the endorsement was procured before or after Plaintiff accepted the Agreement, whether Dubai entered into the endorsement deliberately, or with whom specifically Dubai sought the endorsement. Plaintiff does not allege any additional facts to ascertain the circumstances under which Dubai procured the endorsement. Failing to put forth well-pleaded factual allegations, Plaintiff's claim does not pass muster under the pleading standards of Rule 8, much less the heightened standards of Rule 9. Fed. R. Civ. P. 8, 9; *Crosswell*, 120 F.4th at 184.

### iii. Fraud by Non-Disclosure

Fraud by non-disclosure "occurs when a party has a duty to disclose certain information and fails to disclose it." *CBE Grp.*, 993 F.3d at 353 (citing *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, L.L.C.*, 572 S.W.3d 213, 219 (Tex. 2019)). A duty to disclose only arises with "evidence of a confidential or fiduciary relationship." *Id.* To demonstrate a claim of fraud by non-disclosure, Plaintiff must show: (1) "the defendant deliberately failed to disclose material facts; (2) the defendant had a duty to disclose such facts to the plaintiff; (3) the plaintiff was ignorant of the facts and did not have an equal opportunity to discover them; (4) the defendant intended the plaintiff to act or refrain from action based on the nondisclosure; and (5) the plaintiff relied on the nondisclosure which resulted in injury. *Id.*

Plaintiff's pleadings do not support a finding that Dubai acted fraudulently by not disclosing the endorsement. Plaintiff alleges that it did not know of the endorsement and that it entered the Agreement only with knowledge of the policies listed in the Agreement. (Dkt. 1 at 4; Dkt. 11 at 10–11.) Yet, the rest of Plaintiff's statements only recite back the elements of the claim.

(Dkt. 1 at 4.) The Complaint recites back the elements of a claim for fraud by non-disclosure without "mak[ing] specific allegations regarding the elements." (*Id.*); *Escalante*, 34 F.4th at 386. Accordingly, Plaintiff's fraud by nondisclosure claim fails to meet the federal pleadings threshold.

### iv.     Aiding and Abetting

Texas has "not expressly" recognized aiding and abetting as a separate cause of action. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224 (Tex. 2017) (citing *Juhl v. Arlington*, 936 S.W.2d 640, 643 (Tex. 1996)). Nevertheless, a cognizable claim for aiding and abetting would "require[] evidence that the defendant, with wrongful intent, substantially assisted and encouraged a tortfeasor in a wrongful act that harmed the plaintiff." *Id.* at 225 (internal citations omitted).

Plaintiff's claim falls below Rule 8's threshold because it only restates the elements of an aiding and abetting claim. *Twombly*, 550 U.S. at 555. It does not state what actions or assistance Agave, MCSS, and Arce rendered to determine whether they assisted Dubai—much less whether such assistance was substantial. (Dkt. 1 at 7.) Nor has Plaintiff pleaded any factual allegations to find Defendants acted "with wrongful intent." *First United*, 514 S.W.2d at 224. Consequently, Plaintiff's aiding and abetting claim fails.

### v.     Concert of Action

Concert of action is not a standalone cause of action. *C.W. v. Zirus*, 2012 WL 3776978, at *8 (W.D. Tex. Aug. 29, 2012) (citing *Juhl*, 936 S.W.2d at 643). However, Texas courts have looked to Restatement (Second) of Torts § 876 to evaluate concert of action claims. *Id.* Section 876 provides for two theories of liability: (1) the common design theory of liability, "requiring allegations of specific intent, or at least gross negligence;" and (2) the substantial assistance theory based on the following five factors: "(1) the nature of the wrongful act; (2) the kind and amount

of assistance; (3) the relation of the defendant and the actor; (4) the presence or absence of the defendant at the occurrence of the wrongful act; and (5) the defendant's state of mind. *Id.*; Restatement (Second) of Torts § 876 (1977).

Plaintiff's claim is not viable under either theory. In assessing Plaintiff's claim under the common design theory, Plaintiff states that Arce, MCSS, and Agave's acts "were intentionally or grossly negligent" but does not say what those acts are. (Dkt. 1 at 7.) Nor do Plaintiff's pleadings suffice to evaluate its claim under the substantial assistance theory. The only factual allegations regarding the endorsement concern the number of trucks covered, the value of the endorsement, and that the trucks were owned by either MCSS or Agave. (*Id.* at 4.) Merely restating the elements of a claim without specific allegations to support those elements does not suffice. *See Escalante*, 34 F.4th at 493. As such, Plaintiff's concert of action claim is not facially plausible. (Dkt. 1); *Twombly*, 550 U.S. at 556.

### vi. Civil Conspiracy

To prove the defendants engaged in a civil conspiracy, a plaintiff must show: "(1) a combination of two or more persons; (2) the persons seek to accomplish an object or course of action; (3) the persons reach a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts [] taken in pursuance of the object or course of action; and (5) damages occur as a proximate result." *First United*, 514 S.W.3d at 222 (internal citations omitted).

Plaintiff's factual allegations are insufficient to support this claim. In its Complaint, Plaintiff pleads actual damages in the amount of $248,662.51 as a result of Dubai's actions, and alleges all Defendants sought the endorsement. (Dkt. 1 at 4–5.) Not only does Plaintiff state mere legal conclusions, but its other contentions fail to address the requisite elements of a civil conspiracy claim. (*Id.* at 8.) As such, Plaintiff's civil conspiracy claim does not pass muster either.

11 / 16

Ultimately, Plaintiff set forth well-pleaded factual allegations to support its breach of contract claim against Dubai. However, Plaintiff's remaining claims—fraud, fraud by non-disclosure, aiding and abetting, concert of action, and civil conspiracy—fail to meet the pleadings threshold.

**C.   Relief**

   **1.   Damages**

Finding a defendant in default holds the defendant to "the truth of the allegations . . . but not damages." *Ins. Co. of the West v. H & G Contractors, Inc.*, 2011 WL 4738197, at *4 (S.D. Tex. Oct. 5, 2011). Typically, a determination of damages requires "a hearing or a demonstration by detailed affidavits establishing the necessary facts" in order to award damages. *Id.* (internal citations omitted). A hearing is unnecessary "when the amount of damages and/or costs can be determined with certainty by reference to the pleadings and supporting documents, and when a hearing would not be beneficial." *Id.* (citing *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993)).

A plaintiff who prevails on a breach of contract claim is entitled to actual damages. *Mays v. Pierce*, 203 S.W.3d 564, 577 (Tex. App. Sept. 26, 2006). Typically, "[t]he normal measure of damages in a breach-of-contract case is the benefit-of-the-bargain measure, the purpose of which is to restore the injured party to the economic position it would have been in had the contract been performed." *Id.* (internal citations omitted).

Plaintiff's well-pleaded factual allegations established a viable claim for damages. Plaintiff seeks $248,662.51 in damages from Dubai. (Dkt. 17 at 2.) Yet, Plaintiff has not detailed how these damages arose nor to what they correspond. While Plaintiff is entitled to damages on its breach of contract claim, Plaintiff has not explained the nature of those damages. To avoid a harsh result,

the Court requires more evidence to determine the appropriate amount of damages. *Lindsey*, 161 F.3d at 893; *Ins. Co. of the West*, 2011 WL 4738197, at *4 (internal citations omitted).

Plaintiff also claims it is entitled to exemplary damages due to "Dubai's actual fraud, gross negligence or malice." (Dkt. 1 at 7.) Texas law allows exemplary damages only when a "claimant proves by clear and convincing evidence" that its harm resulted from fraud, malice, or gross negligence. Tex. Civ. Prac. & Rem. Code § 41.003(a). As discussed above, Plaintiff has not sufficiently pleaded a claim of fraud to find any Defendant acted fraudulently. Nor has Plaintiff alleged Dubai breached the Agreement due to malice or gross negligence. Consequently, exemplary damages are not warranted.

### 2. Attorney's Fees

A plaintiff "may recover attorney's fees only when permitted by statute or contract," including a successful breach of contract claim. *Trevino v. City of Pearland*, 531 S.W.3d 290, 297 (Tex. App. 2017) (internal citations omitted); Tex. Civ. Prac. & Rem. Code Ann. § 38.001. The court must award attorney's fees when a party presents "proof of reasonable and necessary fees." *Trevino*, 531 S.W.3d at 297 (citing *Ventling v. Johnson*, 466 S.W.3d 143, 154 (Tex. 2015)). To calculate reasonable attorney's fees, the court conducts a two-step process. *Montgomery v. State Farm Lloyds*, 2024 WL 2369415, at *1 (5th Cir. May 23, 2024) (internal citations omitted). First, the court "determine[s] the reasonable number of hours spent on the litigation and reasonable rates for the lawyers involved." *Id.* (internal citations omitted). Second, "the court must [] multiply the reasonable numbers by the reasonable rates to calculate the 'base lodestar figure.'" *Id.* The court maintains discretion to increase or decrease this amount depending on the applicability of the *Johnson* factors. *Id.* (citing *Johnson v. Ga. Highway Express*, 488 F.2d 714, 717–719 (5th Cir. 1974)).

On top of its other claims for relief, Plaintiff seeks to recover $4,900 in attorney's fees. (Dkt. 1 at 8); Tex. Civ. Prac. & Rem. § 38.001. In support of its request, Plaintiff submitted an affidavit from its attorney Todd Hoodenpyle who attests to this amount. (Dkt. 17 at 5–6.) However, Plaintiff did not indicate the number of hours spent working on this case nor provide any other accounting for its legal services rendered. Accordingly, the Court reserves judgment on this claim until Plaintiff supplements its claim with billing information on its legal services to determine the appropriate amount.

### 3. Prejudgment Interest

In a diversity case, "Texas law governs the award of prejudgment interest." *ARV Offshore Co., Ltd. v. Con-Dive, L.L.C.*, 2012 WL 176322, at *11 (S.D. Tex. Jan. 20, 2012) (citing *Arete Partners, L.P. v. Gunnerman*, 643 F.3d 410, 412 (5th Cir. 2011)). A party may recover prejudgment interest, "compensation allowed by law as additional damages for lost money due as damages during the lapse of time between the accrual of the claim and the date of judgment," in limited circumstances. *Trevino*, 531 S.W.3d at 297 (quoting *Ventling*, 466 S.W.3d at 153). A court may award prejudgment interest when allowed by statute or, when no statute applies, under the "general principles of equity." *Id.* (citing *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 529 (Tex. 1998)). Under statute, a party may recover prejudgment interest for "claims of wrongful death, personal injury, property damage, and condemnation." *Id.* (citing *Miller v. Debo Homes, Inc.*, 2016 WL 5399507, at *4 (Tex. App. Sep. 27, 2016)). Moreover, "damages awarded for breach of contract bear prejudgment interest." *Adams v. H & H Meat Prods., Inc.*, 41 S.W.3d 762, 780 (Tex. App. Mar. 1, 2001).

Because Plaintiff is entitled to damages on its breach of contract claim against Dubai, it is also entitled to prejudgment interest. However, the Court will reserve judgment on a final calculation of prejudgment interest until an appropriate amount of relief can be determined.

### 4.     Post-Judgment Interest

"Post-judgment interest is governed by federal law and awarded as a matter of course" in diversity cases. *ARV Offshore Co.*, 2012 WL 176322, at *11. Under § 1961(a), a party may seek post-judgment interest "on any judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). A party is entitled to post-judgment interest on damages, attorney's and prejudgment interest. *ARV Offshore Co.*, 2012 WL 176322, at *11. As such, Plaintiff is entitled to post-judgment interest on relief related to its breach of contract claim against Dubai. *See* 28 U.S.C. § 1961(a). Post-judgment interest will begin to accrue from the date of entry for the final judgment.

### 5.     Costs

Under Rule 54 of the Federal Rules of the Civil Procedure, a prevailing party is entitled to costs. *Maurice Mitchell Innovations, L.P. v. Intel Corp.*, 492 F.Supp.2d 684, 686 (E.D. Tex. June 20, 2007); Fed. R. Civ. P. 54(d). However, "the prevailing party must still demonstrate that its costs are recoverable under Fifth Circuit precedent." *Maurice Mitchell Innovations*, 492 F.Supp.2d at 686. Section 1920 restricts the costs the Court may impose. 28 U.S.C. § 1920. The court cannot award costs not included in § 1920, but it may refuse to award costs listed therein. *Maurice Mitchell Innovations*, 492 F.Supp.2d at 686.

Plaintiff seeks costs in its Complaint (Dkt. 1 at 9) and its Motion for Default Judgment (Dkt. 17 at 3.) While Plaintiff is entitled to costs associated with its breach of contract claim against Dubai, he has not detailed what costs it incurred. Until Plaintiff submits supplemental information

regarding the costs he seeks to recover, the Court reserves final judgment on the determination on his claim request for costs.

## Conclusion

For the foregoing reasons, Plaintiff's Motion for Default Judgment (Dkt. 17) is GRANTED in part and DENIED in part. Specifically, default judgment is GRANTED for Plaintiff's breach of contract claim against Dubai. However, default judgment is DENIED for Plaintiff's fraud, fraud by non-disclosure, aiding and abetting, concert of action, and civil conspiracy claims.

Plaintiff is entitled to damages and reasonable attorney's fees on its breach of contract claim. The Court reserves judgment on Plaintiff's claim for actual damages, attorney's fees, and prejudgment and post-judgment claims. Accordingly, Plaintiff is ORDERED to submit supplemental briefing to determine the appropriate amount of monetary relief, including evidence of actual damages claimed, attorney's fees, and costs on or before **February 28, 2025**.

IT IS SO ORDERED.

SIGNED this February 4, 2025.

_____
Diana Saldaña
United States District Judge